IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ETHAN R GORDON,

    Plaintiff,

v.                                            CASE NO. 4:10-cv-111-WS-GRJ

P. LEMON, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff initiated this case by filing a *pro se*, *in forma pauperis*, prisoner civil rights complaint under 42 U.S.C. § 1983, and is proceeding pursuant to a Second Amended Complaint.  Doc. 19.  Plaintiff was an inmate in the custody of the Florida Department of Corrections at the time this case was filed but has since been released from custody.  The events giving rise to the complaint occurred while Plaintiff was confined at Jefferson Correctional Institution and pertain to the medical care received by Plaintiff at Jefferson.  The Defendants are medical personnel who treated Plaintiff.  Now pending before the Court is Doc. 77, Defendants' motion for summary judgment.  Plaintiff was advised of his right to respond to the motion, and the consequences of summary judgment, and has filed a response in opposition.   Doc. 85.  For the reasons discussed below, the undersigned recommends that Defendants' Motion be granted and that judgment be entered in Defendants' favor.

## Plaintiff's Allegations

The allegations of the complaint may be summarized as follows. Plaintiff contends that on April 2, 2008, he was assaulted in his cell by another inmate. While he was being taken to Medical, he told the officer that he thought his shoulder was dislocated. Plaintiff was seen by Defendant Nurse Wood, but Plaintiff alleges that Wood did not provide any treatment. He alleges that Wood told him there was nothing wrong with his shoulder, but did not make an independent evaluation. Plaintiff was given an ice pack for his head and Ibuprofen.

Plaintiff alleges that about seven hours later he was seen by Defendant Nurse Francis. He contends that he complained of severe pain and reduced range of motion in his right arm, but Francis did not address his shoulder complaints, did not perform or order any diagnostic testing, and did not refer him to see Dr. Velasco, the Chief Health Officer ("CHO").

Later the same day, Plaintiff was placed in administrative confinement ("AC") pending a disciplinary report. Advanced Registered Nurse Practitioner (ARNP) Lemon examined Plaintiff and noted that his shoulder was very swollen with decreased range of motion, "status post dislocated rt. shoulder." Lemon prescribed Ibuprofen and ordered an x-ray for the next week.

On April 6, 2008, Plaintiff alleges he was provided 90 doses of 800mg Ibuprofen to be kept on his person ("KOP"). On April 7, he was seen by mental health staff, and on April 8 corrections staff took his KOP medication without explanation. Plaintiff alleges that he continued in pain, and Defendants failed to provide him with medication. On April 18, pursuant to his complaints, he was examined by ARNP Key. Plaintiff complained of severe pain and inability to use his right arm and hand. Key told Plaintiff

he was being scheduled for an x-ray. Plaintiff states that during the 16 days following the injury no medication or treatment other than ibuprofen was provided.

Plaintiff alleges that x-rays were taken on April 22, and on April 28 Key told him that his right shoulder was fractured and he would be scheduled for "urgent evaluation" by an orthopedic specialist. Orthopedist Dr. Lord evaluated Plaintiff on May 7. He ordered further x-rays and diagnosed Plaintiff with a comminuted sub-capital displaced fracture of the proximal right humerus. Plaintiff alleges that Dr. Lord told him that corrective surgery would have been advisable, but would no longer be helpful due to the time lapse and "misaligned healing process." Plaintiff contends that Dr. Lord told him he would never be able to raise his right arm above his head again, leaving Plaintiff permanently disabled.

On May 15, Plaintiff was provided with a sling for his arm. On June 10, he reported to Medical for continuing neck and shoulder pain and was given ibuprofen and sport cream. On June 18, he saw Dr. Lord for a follow-up. On July 3, Plaintiff reported to Medical through sick-call for continuing neck and shoulder pain and was given KOP ibuprofen; the sling was discontinued. Plaintiff alleges that he was not provided with any assistance in dealing with the mental and emotional issues encountered in becoming a disabled person. Plaintiff presented at sick-call on January 22 and received more ibuprofen and sport cream.

Plaintiff contends that his injury was worsened by a delay in care, and that he would not be permanently disabled had Defendants provided timely and proper care. Plaintiff contends that Defendants' actions amounted to deliberate indifference in violation of his 8th Amendment rights. Doc. 19.

## Defendants' Summary Judgment Motion and Evidence

The affidavits and exhibits submitted in support of Defendants' motion reflect the following. On April 2, 2008 Plaintiff received a disciplinary report for fighting. Shortly after the fight, Plaintiff was brought to Medical, where he reported that he fell while getting out of the top bunk. Doc. 77, Exhibit C & C1. Plaintiff stated, "My shoulder I think was out of joint but when I moved it I felt it pop back in." *Id*. Plaintiff could move his right shoulder up and down, and no deformity was noted in the joint. *Id*. Due to a head injury, Plaintiff was admitted to the infirmary for observation. He was prescribed ibuprofen and instructed to keep an ice pack on his head. *Id*.

Early the next morning, Plaintiff was examined by Nurse Francis. Exhibit D & D1. Plaintiff told Francis "I dislocated my shoulder. I was standing up like this [with his right hand above his head leaning against a wall] and it popped. I popped it back in place. It's not dislocated anymore." *Id*. Plaintiff complained of pain, and Francis noted that his right arm was held stiff against his body and that he had decreased range of motion. *Id*. Francis diagnosed Plaintiff with an alteration in comfort relative to pain from the dislocation, and provided him with ibuprofen. *Id*.

According to protocol, since Plaintiff was admitted to the infirmary for observation he was required to see an ARNP or M.D. in order to be discharged. Exhibits C & D. ARNPs generally provide the bulk of patient care, while the CHO performs administrative functions and also sees inmates for routine callouts or if there is a need for a secondary evaluation as determined by the ARNP. Exhibits C, D & E.

Later the same morning, Plaintiff was examined by ARNP Lemon. Exhibit E at 1-5 & E1 at 1. He complained of a "muscle pull" in his left lower back, and also complained of increased pain and swelling in his shoulder. *Id*. Plaintiff advised that his

shoulder had been dislocated and "popped back in." *Id*. Lemon noted that Plaintiff's shoulder was swollen with bilateral pulses intact, and that Plaintiff did not have any bruising. *Id*. He had a 20 degree decrease in the range of motion of his right arm, with no crepitus or popping. *Id*. Lemon noted that Plaintiff was ambulatory but had a torqued body stance and palpable muscle pain in the lower back. *Id*. Lemon noted that Plaintiff had a full range of motion in his lumbar-sacral spine and that his muscle strength was 5/5. *Id*. Lemon diagnosed Plaintiff with right shoulder strain post dislocation and left low back strain; he prescribed 800 mg ibuprofen to be given at 8:00 p.m. while in confinement and as needed once Plaintiff was released from confinement. *Id*. Lemon also recommended that Plaintiff have a sling, if it was approved by security. *Id.* Due to security considerations, many medical devices are not allowed in confinement cells. Although the sling was recommended for comfort, it was not considered medically necessary and would not cause further injury if Plaintiff was not allowed to use it in confinement. Lemon ordered an x-ray with follow-up appointment in a week, and educated Plaintiff on sprains and shoulder anatomy. *Id*.

     Plaintiff was seen in follow-up on April 11 and reported his shoulder hurt but denied any numbness. Exhibit E & E1. ARNP Key diagnosed right shoulder strain following dislocation, and changed Plaintiff's ibuprofen from as needed to twice per day. Key noted that the x-ray had not yet been done and re-ordered the x-ray. Key saw Plaintiff again on April 18 for follow-up. Since the x-ray had not been completed, she scheduled Plaintiff for the following Tuesday. *Id*.

     The x-ray was completed on April 22, and revealed a comminuted fracture of the proximal right humeral shaft with adduction of the humeral head in the glenoid fossa. Exhibit F at 4. Key discussed the results with Dr. Velasco and ordered an "urgent"

orthopedic consult, which according to treatment categorization meant that the consult could take place within a few weeks. Exhibit E at 8, Exhibit F at 5. Plaintiff was seen in the clinic for follow up on April 28, and stated that he was "OK." Exhibit E at 6-9, E1 at 6. Key gave Plaintiff a low-bunk pass for two months. *Id*.

On May 7, 2008, Plaintiff was seen by orthopedic specialist Dr. Lord at the Reception and Medical Center. Exhibit E & E1 at 7-8. A second x-ray was done, and Dr. Lord recommended pain control and work and sports restrictions; he set a follow-up appointment in two months. Exhibit E & E1 at 8-9; Exhibit F. Dr. Lord's consult does not reflect the opinion that there was a delay in treatment or that surgery would have been advisable. *Id*. Plaintiff had passive forward flexion of 90 degrees, active forward flexion of 30 degrees, zero external rotation, and internal rotation to the mid-pelvis. *Id*.

Following his consult with Dr. Lord, Plaintiff was treated for pain on May 15 and June 10. A sling was issued on May 15. Exhibit E1 at 10-12. On June 18, 2008, Plaintiff returned to RMC for a follow-up appointment with Dr. Lord. Exhibit E & E1 at 13-15. Plaintiff demonstrated active forward flexion of 90 degrees, full passive movement, full external and internal rotation, abduction, adduction, full passivity, and showed 95% strength levels. *Id*., Exhibit F at 5. A third x-ray showed no change in position and partial healing of the injury. Exhibit E1 at 16; Exhibit F at 5. Dr. Lord did not recommend any further treatment. Exhibit E1 at 14-15; Exhibit F at 5.

On June 19, 2008, Plaintiff was seen by Defendant Lemon. Exhibit E at 1-5 & E1 at 13. Plaintiff complained of shoulder pain and stated he could not lift his arm above his head. *Id*. Lemon noted a decreased range of motion with intact strength, and prescribed ibuprofen. She recommended that Plaintiff not use his sling unless absolutely necessary. *Id*.

Plaintiff saw Lemon again on July 3, 2008, and reported he was using his arm more and that being out of the sling had helped. Exhibit E at 1-5 & E1 at 18.  Plaintiff was provided with sport cream for pain.  *Id*.  Lemon reinforced the importance of range of motion and strengthening exercises and told Plaintiff to go to sick call if he continued to have problems.  *Id*.  Such exercises are important in preventing a condition called "frozen shoulder," which is characterized by pain and stiffness in the shoulder joint following a shoulder injury.  Exhibit E at 5.

During the following year, Plaintiff accessed sick call twice regarding his shoulder: on January 22, 2009, he reported pain and was provided analgesic balm and ibuprofen, and on September 1, 2009, he reported pain in his right shoulder and left hip.  Exhibit E1 at 20-25.  Plaintiff was referred for further evaluation.  *Id*. at 24.  Plaintiff was seen by Defendant Key on September 14, 2009.  Exhibit E at 5-8 & E1 at 25.  He again complained of hip and shoulder pain and requested pain medication.  *Id*.  Key diagnosed Plaintiff with joint pain and ordered an x-ray of the right shoulder and left hip, with a follow-up appointment after the x-ray was completed.  *Id*.  The x-ray of the shoulder was completed on September 22, 2009, and included an evaluation of alignment, arthritic changes, joint narrowing, hypertrophy, osteophyte formation, sclerosis and cysts.  Exhibit E1 at 26; Exhibit F at 5.  The x-ray showed the old fracture in the humeral neck, but no other abnormalities.  *Id*.  Plaintiff was seen for a follow up with Defendant Key on September 28, 2009, and was provided ibuprofen for shoulder pain. Exhibit E at 5-8 & E1 at 25.

Plaintiff was transferred to Mayo CI on November 9, 2009, where he remained until his release from custody on November 24, 2010.  Exhibit A.  Plaintiff's medical

records show no further complaints or examinations related to his shoulder. Exhibit G. Plaintiff's Pre-Release Healthcare Summary did not list any post-release recommendations or follow up, nor did it list any deformities, disabilities or other physical limitations. *Id*. at 9. Plaintiff went to sick call after the pre-release exam and stated that the doctor did not discuss his knee pain related to a knee injury that occurred at Mayo CI. *Id.* at 10. His restrictive passes were extended through the expiration of his sentence due to his knee issues, and he was advised to follow up with his primary care physician upon release regarding his knee. *Id*.

Defendants submitted excerpts from Plaintiff's video deposition in support of the instant motion. Plaintiff testified that following his release from custody, he has not sought medical treatment for his shoulder, and stated that "I can go to Wal-Mart and buy ibuprofen." Plaintiff conceded that he did not report any psychological problems stemming from his injury to any Defendants. Plaintiff also conceded that he has never been told that he was permanently disabled. Exhibit H.

Defendants contend that the foregoing summary judgment evidence establishes that Defendants did not violate Plaintiff's Eighth Amendment rights in connection with his medical care. Doc. 77.

In response to Defendants' summary judgment motion, Plaintiff asserts that the medical records show that Defendants accepted his "self-diagnosis" of shoulder dislocation, but did not make an independent professional assessment of his injury. He contends that earlier x-rays would have shown that his self-diagnosis was incorrect. Plaintiff asserts that he believes that the outcome of his injury would have been different had an x-ray been performed earlier. Doc. 85

## Summary Judgment Standard of Review and Eighth Amendment Claims

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment. "To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Intern., Inc.*, 588 F.3d

1291, 1306–07 (11th Cir. 2009).  To establish the second element, deliberate indifference to the serious medical need, the plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir.2004); *see also Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994) (explaining that the plaintiff must show that the defendant was "both [ ] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference").

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference.  *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991)*; see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle* 429 U.S. at 107)); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment.  Along with all other aspects of health care, this remains a question of sound professional judgment.'") ( quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.").   For the same reason, the fact that jail medical personnel did not refer Plaintiff to an outside physician does not provide a

basis for Eighth Amendment liability. *See Estelle* 429 U.S. at 107 ("A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment.").

In order for a plaintiff to demonstrate that a delay in medical treatment amounts to deliberate indifference, he "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Whitehead v. Burnside*, 403 Fed.Appx. 401, 2010 WL 4629001 (11th Cir. 2010) (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187–88 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9, (2002)) ("[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.")

## DISCUSSION

Defendants contend that they are entitled to summary judgment because, viewing the evidence in the light most favorable to Plaintiff, he has failed to establish an Eighth Amendment violation stemming from his shoulder injury and medical care. Assuming that his shoulder injury was an objectively serious medical need (the first *Estelle* element), it is apparent that Plaintiff received medical evaluation and treatment consistent with the medical judgment that he had sustained a dislocated shoulder. This medical judgment was based on the medical personnel's examination and clinical findings, as documented in Plaintiff's records, and was consistent with Plaintiff's own statements that he believed he dislocated his shoulder. On this record, Plaintiff has failed to meet his burden of showing that Defendants had any subjective knowledge of

a risk of serious harm due to Plaintiff's shoulder fracture, and disregarded that risk (the deliberate indifference required under the second *Estelle* element). At most, Plaintiff's allegations suggest that Defendants were negligent in failing to diagnose the shoulder fracture at an earlier stage of treatment, but such asserted negligence is insufficient to support a deliberate-indifference claim.

Moreover, Plaintiff has failed to come forward with any evidence that any delay in diagnosing the fracture caused the permanent disability that he now claims. Plaintiff alleges that Dr. Lord told him that surgery at an earlier point would have prevented disability, but this allegation is wholly unsupported in the summary judgment record. On this record, Plaintiff has not established any causation between a delay in treatment and his alleged disability – the third *Estelle* element. His unsupported assertion of causation is insufficient to overcome Defendants' summary judgment evidence.

In summary, Defendants' summary judgment evidence reflects that there is no genuine issue of material fact as to whether Defendants were deliberately indifferent to Plaintiff's serious medical need, and no genuine issue of material fact as to whether there is a causal connection between Defendants' treatment of Plaintiff and his claimed injury. Accordingly, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment deliberate-indifference claims.

## RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment, Doc. 77, be **GRANTED**, and that judgment be entered in Defendants' favor.

**IN CHAMBERS**  this 21st day of August 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.